EDDIE MAE ROBINSON *v.* REVIEW BOARD OF
IND. EMP. SEC. DIV., ET AL.

[No. 1170A194. Filed July 7, 1971.]

*Lapin & Koor,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee Review Board, *Leland*

*B. Cross, Jr., Jack R. Snyder, Ice Miller Donadio & Ryan,* of Indianapolis, for employer-appellee.

LOWDERMILK, J.—This appeal comes to us from a decision of the Review Board of the Indiana Employment Security Division in favor of the Review Board and Radio Corporation of America, the employer, reversing the decision of the claims referee and disqualifying claimant from unemployment benefits.

Claimant timely filed her request for appeal to the Review Board, which Board timely notified each of the parties that the hearing would be held on October 15, 1970. Claimant, on October 5, 1970, requested permission in an informal way to introduce additional evidence, which request was denied by the Board on October 8, 1970. The claimant had not appeared at either of two prior hearings and no reasons therefor appear in the record before us.

The facts in dispute before the Review Board were whether claimant was discharged for misconduct in connection with her work and whether claimant was entitled to present additional evidence at the hearing before the Review Board.

We shall first consider the specification of error assigned on her misconduct in connection with her work.

The claimant was, and had been, employed for two and one-half years by Radio Corporation of America as a machine operator and last worked on April 1, 1969; she then reported off work on April 2 and 3 through a fellow employee and did not report thereafter, and did not use the form prescribed by the appellee, Radio Corporation of America, for such notice to comply with the company rule.

New employees were supplied with company rules when employed, which rules covered the employee's duty to inform the company on certain company forms if they were to be absent in excess of seven calendar days without an approved leave of absence. Failure to so file this form brought on an

automatic dismissal, although there had been no prior misconduct on the part of the employee.

Although there are copies of letters and other written instruments referred to in the briefs and also set out in the transcript, this court is not at liberty to consider them, as they were not introduced and admitted into evidence for the record. The only witness who testified and whose evidence we are at liberty to consider is that evidence of James Humphrey, Employment Interviewer, a member of Personnel at Radio Corporation of America in Marion.

Mr. Humphrey testified the claimant was an employee and the last day she worked was April 1, 1969. After that he was asked this question:

"Q. April 1, 1969 was the last day she worked. Then what happened?

"A. She subsequently, I believe, called in a couple of days on personal illness. 2nd and 3rd. Was not heard from since. She was now in excess of the seven calendar days without approved leave of absence, which constitutes a voluntary termination. Automatically as of April 8th, she had voluntarily terminated herself. This is in the plant rules and regulations. She was sent a notice of termination by telegram on April 8, I believe.

\* \* \*

"Q. I am wondering if she know what she had to do if she was compelled to be off at least seven days?

"A. Each new employee is given a copy of the company rules and regulations. When an employee reports off to the Plant Dispensary, which is the way all new employees report off, they are told, if they are off in excess of seven calendar days, they must be put on an approved leave of absence, so we must assume these people were explained the rules."

On further interrogation the witness explained, to the question "Do you mean by 'approved leave of absence' that she must sign or file a formal paper?":

"A.   She must have the paper work—* * *

"Q.   That is required of any absence of seven days or more?

"A.   Seven calendar days—that is correct."

Appellees saw fit not to introduce the corporation's seven day rule on absenteeism in the record. However, the evidence of witness-employee Humphrey definitely, in our opinion, stated the rule that the employee *must be without approved leave of absence in excess of the seven calendar days before it constitutes a voluntary termination.*

The claimant worked on April 1, 1969, and received a telegram of dismissal on April 8, 1969. Under the company rule as related by the corporation the absence *must have been in excess of seven calendar days.* In this case the claimant had the full day of the seventh day, which was April 8, 1969, to get the necessary company documents on file with the corporation and still comply with the rule. There is no evidence in the record of the time of day she received the telegram of her dismissal, and too, there is nothing in the record as to the hours she worked. So far as this court can discern from the record before it she might have been available to work a shift commencing later in the day on the 8th of April and then, having received the telegram, been deterred from reporting to work, all of which would have been within her seven calendar day period of time off.

The claimant having last worked on April 1, 1969, and having the privilege of returning to work at any time *not in excess of seven calendar days* without proper notice to her employer, had the full day of April 8th in which to return to work or to give written notice to her employer as so required by the employer, that she would not be able to return to work within the seven day time limit. Thus, the employer-corporation erred and sent their termination telegram on the seventh rather than the eighth calendar day of her absence, thereby violating the time of their own contract, and there was no substantial evidence supporting the conclusion of the Review Board. And,

too, reasonable men would be bound to reach the opposite conclusion from the evidence in the record.

The parties have cited many cases in their respective briefs, but the error is so great that we need not deal at length with them.

This court is not at liberty to weigh the evidence, as a rather basic premise of review, and must accept the facts as found by the particular Board involved, subject to certain exceptions hereinafter set out. *Williamson Co.* v. *Review Board of Ind. Emp. Sec. Div.* (1969), 145 Ind. App. 266, 250 N. E. 2d 612.

In this case, Judge Hoffman, speaking for the court, quoted from the case of *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399, as follows:

> " 'If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside, not because incompetent evidence was admitted, but rather because the proof, taken as a whole, does not support the conclusion reached.' "

And, quoting further on the fact this court could not weigh the evidence:

> "Two further exceptions were noted by Judge Arterburn, speaking for our Supreme Court in *Mann* v. *City of Terre Haute et al.*, 240 Ind. 245, 249, 163 N. E. 2d 577, 579 (1960):
> " 'This does not mean that the courts will review the administrative action of any board, commission or governmental corporation for the purpose of substituting its opinion or judgment for that of the board in discretionary matters within the jurisdiction of such an administrative body. The courts will, however, review the proceedings to determine whether procedural requirements have been followed and if there is any substantial evidence to support the finding and order of such a board. The courts will also review the proceedings to determine

whether or not the order of the board, its judgment or finding, is fraudulent, unreasonable or arbitrary, if requested.' (Citing authorities.) See also: *Pollock* v. *Studebaker Corporation,* 230 Ind. 622, 105 N. E. 2d 513 (1952) ; *Ken Schaefer Auto Auction, Inc.* v. *Tustison,* 136 Ind. App. 174, 198 N. E. 2d 873 (1964).

"In *Nordhoff* v. *Rev. Bd. Ind. Emp. Sec. Div. et al.,* 129 Ind. App. 378, 383, 156 N. E. 2d 787, 789 (1959), this Court, citing *Egbert* v. *Egbert et al.,* 226 Ind. 346, 352, 80 N. E. 2d 104 (1948), noted that while, 'The board * * * is not held to conformity to "common law or statutory rules of evidence and other technical rules of procedure" (Burns' Sec. 52-1542e, 1951 Replacement) * * * we do not think such liberality bestows on the board the right to ignore competent evidence.'

"The *Nordhoff* case was reversed and remanded since it appeared that the Board had, in fact, ignored competent evidence.

"Finally, this Court has said, as an exception to the general rule, that if reasonable men would be bound to reach the opposite conclusion from the evidence in the record, the decision of the Board may be reversed. See: *Anderson Motor Serv., Inc.* v. *Review Bd. of Ind.,* E.S.D., Ind. App., 247 N. E. 2d 541 (1969) ; *Dormeyer Industries* v. *Review Board etc.,* 133 Ind. App. 500, 183 N. E. 2d 351 (1962) ; *Youngstown S. & T. Co.* v. *Rev. Bd.,* E.S.D., 124 Ind. App. 273, 116 N. E. 2d 650 (1954).

"Each of these exceptions, if established by the appellant in a given case, can provide the basis for reversal of the decision of the Review Board. For purposes of clarification, we shall restate these exceptions:

2. "The reviewing court may reverse the decision of the Review Board if:

"(1) The evidence on which the Review Board based its conclusion was devoid of probative value;

"(2) The quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis;

"(3) The result of the hearing before the Review Board was substantially influenced by improper considerations;

"(4) There was no substantial evidence supporting the conclusions of the Review Board;

"(5) The order of the Review Board, its judgment or finding, is fraudulent, unreasonable or arbitrary;

"(6) The Review Board ignored competent evidence;

"(7) Reasonable men would be bound to reach the opposite conclusion from the evidence in the record."

Appellant's sole assignment of error is that the decision of the Review Board of the Indiana Employment Security Division is contrary to law.

There was no substantial evidence supporting the conclusion of the Review Board.

Reasonable men would be bound to reach the opposite conclusion from the evidence in the record.

For the foregoing reasons, the decision of the Review Board is hereby reversed.

Sullivan, P.J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 473.